IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

MISSOURI EWING                                                                                      PLAINTIFF

v.                                                                    CIVIL ACTION NO. 1:24-CV-185-SA-RP

TOYOTA MOTOR MANUFACTURING
MISSISSIPPI, INC.                                                                                  DEFENDANT

ORDER AND MEMORANDUM OPINION

On October 2, 2024, Missouri Ewing initiated this civil action by filing her Complaint [1] against Toyota Motor Manufacturing Mississippi, Inc. ("Toyota"). Ewing filed her First Amended Complaint [28], which is now the operative complaint, on February 12, 2025. The First Amended Complaint [28] brings claims for a violation of the Americans with Disabilities Act ("ADA") and race discrimination in violation of 42 U.S.C. § 1981 and Title VII. Before the Court is Toyota's Motion to Compel Arbitration and Stay Judicial Proceedings [12]. The Motion [12] has been fully briefed and is now ripe for review. The Court is prepared to rule.

*Relevant Factual Background*

This is an employment discrimination case. Ewing is a former production employee of Toyota who alleges that she was terminated on September 12, 2023 for discriminatory reasons.[1]

Toyota contends that in June 2022, prior to Ewing's termination, Toyota Motor North America, Inc. ("TMNA"), on behalf of itself and all subsidiaries and related companies (including Toyota—the defendant herein), mailed the 2022 One Toyota Arbitration Agreement "to all active

---

[1] For the reasons explained hereinafter, the factual basis underlying Ewing's claims is not necessary to the relevant inquiry applicable to Toyota's Motion [12].

United States-based employees." [13] at p. 1-2.[2] The Arbitration Agreement consists of a total of six pages and provides, in pertinent part:

> This Agreement is effective ("Effective Date") as of the earlier of September 1, 2022 and Your first date of employment with Company if You were hired after May 18, 2022. *You accept this Agreement by continuing or commencing employment with Company on or after the Effective Date.*
>
> By this Agreement, Company and You mutually agree to resolve through binding arbitration *all claims*, including but not limited to claims about Your employment with Company and Your separation from employment with Company, that Company may have against You or that You may have against (1) Company, (2) Company's officers, directors, employees or agents in their capacity as such or otherwise, (3) Company's benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates and agents, and/or (4) all successors and assigns of these entities or individuals ("Claims"). Company and You waive the right to have a court or jury trial on any arbitrable claim.

[12], Ex. 1 at p. 6 (emphasis added).

The parties do not dispute that Ewing continued her employment with Toyota after September 1, 2022—the Arbitration Agreement's effective date—until her termination in September 2023. However, Ewing denies receipt of the Arbitration Agreement via mail or otherwise. She contends that she first learned of the Arbitration Agreement during the present litigation, and the parties agree that Ewing did not sign the agreement.

In sum, the parties dispute the validity of the Arbitration Agreement and whether it should be given effect. Through its Motion [12], Toyota seeks to compel arbitration of Ewing's claims pursuant to the Arbitration Agreement. Ewing opposes the Motion [12].

---

[2] The Court will refer to the 2022 One Toyota Arbitration Agreement hereinafter as the "Arbitration Agreement."

*Standard*

"'[T]he Fifth Circuit has never discussed the appropriate standard for a district court to apply when considering a motion to stay or compel arbitration.'" *Nida v. Tactical Force, LLC*, 2025 WL 969247, at *2 (S.D. Miss. Mar. 31, 2025) (quoting *Rain CII Carbon, LLC v. ConocoPhillips Co.*, 2010 WL 148292, at *3 (E.D. La. Jan. 11, 2010)). But, "'[t]he majority of other circuits apply a summary judgment-like standard, giving deference to the claims of the non-movant.'" *Id.* (quoting *ConocoPhillips Co.*, 2010 WL 148292 at *3). "'The courts that use the summary judgment standard of Federal Rule of Civil Procedure 56 have found it appropriate because the district court's order compelling arbitration is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate.'" *Id.* (quoting *Grant v. House of Blues New Orleans Restaurant Corp.*, 2011 WL 1596207, at *3 (E.D. La. Apr. 27, 2011)); *see also* 9 U.S.C. § 4 (providing that "upon being satisfied that the making of the agreement for arbitration… is not in issue, the court shall make an order directing the parties to proceed to arbitration[.]"). "District courts in this circuit have also considered motions to compel arbitration under the summary judgment standard." *Johnson v. CMI Grp.*, 2020 WL 8461518, *3 (N.D. Tex. Dec. 29, 2020) (collecting cases); *see also Nida*, 2025 WL 969247 at *2; *Kidd v. Lowe's Home Centers, LLC*, 2020 WL 9258481, at *3 (S.D. Miss. Dec. 2, 2020).

*Analysis and Discussion*

To determine whether the parties have agreed to arbitrate their claims, the Court considers "'(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement.'" *Auto Parts Mfg. Mississippi, Inc. v. King Const. of Houston, L.L.C.*, 782 F.3d 186, 196-97 (5th Cir. 2015) (quoting *Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 392 (5th Cir.2002)). In her Response Memorandum [24], Ewing concedes the second prong but takes issue with the first. *See* [24] at p. 2 ("The second

3

factor is not contested."). Therefore, the only issue to be resolved is whether the Arbitration Agreement is a valid agreement between the parties to arbitrate Ewing's employment discrimination claims.

Important to the issue presented, "[a]lthough there is a strong federal policy favoring arbitration, it 'does not apply to the determination of whether there is a valid agreement to arbitrate between the parties.'" *Lower, LLC v. Amcap Mortg., Ltd.*, 2024 WL 2784326, at *4 (E.D. Tex. May 30, 2024) (quoting *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 516 n. 5 (5th Cir. 2019)); *see also Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012). This is the case because the Federal Arbitration Act ("FAA") "'does not require parties to arbitrate when they have not agreed to do so.'" *Id.* (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989)). "To determine whether an agreement to arbitrate is valid, courts apply 'ordinary state-law principles that govern the formation of contracts.'" *Carey*, 669 F.3d at 205 (quoting *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008)). The parties agree that Mississippi contract law governs the Court's inquiry. *See* [13] at p. 3; [24] at p. 2.

Pursuant to Mississippi law, "[t]he burden of establishing the existence of an arbitration agreement, in line with the burden of establishing the existence of a contract, rests on the party seeking to invoke it." *Wellness, Inc. v. Pearl River Cnty. Hosp.*, 178 So. 3d 1287, 1292 (Miss. 2015). In Mississippi, "[a]n agreement must include the following elements to be a valid contract: '(1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation.'" *JP&G LLC v. Voss*, 331 So. 3d 569, 579 (Miss. Ct. App. 2021) (quoting *Grenada Living Ctr. LLC v. Coleman*, 961 So. 2d 33, 37 (Miss. 2007)).

4

Toyota argues that the Arbitration Agreement meets all elements of a valid contract. In response, Ewing argues that the Arbitration Agreement is not a valid agreement for two reasons. First, she argues that she did not assent to the agreement because she did not receive it in the mail. Second, she contends that, even if she had presumably received the agreement in the mail, the agreement is not enforceable. In other words, Ewing contests the fifth element and appears to take issue with the sixth element as well. Since Toyota bears the burden of proof on this issue, the Court will first consider whether Toyota has established the contested element of mutual assent before turning to Ewing's second argument.

"The mutual assent of each of the contracting parties to the terms of the contract is essential to the formation of a valid contract and is determined by considering whether the parties mutually agreed to the terms offered and accepted." *Voss*, 331 So. 3d at 579. "Mutual assent is often evidenced by a written contract signed by all parties." *Banks v. Cavalier Homes, Inc.*, 2024 WL 1315859, at *5 (N.D. Miss. Mar. 27, 2024) (quoting 3A MS Prac. Encyclopedia MS Law § 21:9 (3d ed.)). As noted above, the parties agree that Ewing did not sign the Arbitration Agreement at issue. Nonetheless, in Mississippi, "mutuality of assent to the terms of a contract may be shown by the acts or conduct of the parties where a signature is lacking." *Logan v. RedMed, LLC*, 377 So. 3d 956, 965 (Miss. 2024) (quoting *Slater-Moore v. Goeldner*, 113 So. 3d 521, 526 (Miss. 2013)).

Relying on Fifth Circuit precedent applying Mississippi law, Toyota takes the position that Ewing manifested assent to the Arbitration Agreement through her conduct in continuing her employment. In its Memorandum [13], Toyota specifically argues that "[w]hile Ewing did not sign the Agreement, the Agreement specifically states that her continued employment beyond September 1, 2022, constituted her acceptance of the Agreement." [13] at p. 3. However, in response this argument, Ewing denies ever receiving the Arbitration Agreement. Thus, the issue here specifically lies in whether Ewing's continued employment with Toyota after September 1,

5

2022 constitutes her acceptance of the Arbitration Agreement terms in light of her contention that she never received the agreement in the mail. The parties submit competing evidence in that regard.

For its part, Toyota submits sworn declarations of two employees in TMNA's legal department—Teresa Rump and Maria Daisy Rojas—who participated in the process of mailing of the Arbitration Agreement to Toyota employees. *See* [12], Ex. 1 at p. 1; Ex. 2 at p. 1. Notably, neither Rump nor Rojas attest to mailing the Arbitration Agreement specifically *to Ewing*.

For example, Rump generally states that she participated in the process of mailing the agreement to employees in June 2022 and that "she prepared documents used in connection with the mailout[.]" [12], Ex. 1 at p. 1. Then, Rump explains how she kept record of *returned* envelopes and details the steps taken to ensure the agreement was received by those employees' whose mail was returned. *Id*. at p. 1-3. Similarly, Rojas generally states that she participated in the subject mailing process but then specifies that she forwarded the agreement for the mailout to "Mr. Jim Smith, Senior Sourcing Account Specialist with Toyota Creative Agency & Print Solutions via email." *Id.*, Ex. 2 at p. 1. Rojas also states that she, along with Rump and a paralegal named Chelsea Miller, maintained record of the *returned* envelopes and her efforts in ensuring the delivery of those returned agreements to employees. *See id.* at p. 1-3. In its Reply [26], however, Toyota argues that Ewing was not on the returned mail list. *See* [26] at p. 3 ("[Toyota] proffered evidence that Plaintiff's information was not listed as a part of the returned mail spreadsheet."). Again, neither Rump nor Rojas state under oath that they mailed the agreement to Ewing—her name simply does not appear in their affidavits.

Toyota also provides the sworn declaration of George Haggarty, CEO of Haggarty Printing, Inc. d/b/a Main Graphics, who served as the Project Manager for the agreement mail out project. *See* [14], at p. 1. In his affidavit, Haggarty states that he was contacted by Jim Smith to assist with the project and generally describes the process for mailing the agreement to Toyota

6

employees. He references two lists, provided to him by Smith, containing the names and addresses of Toyota employees and attests that his business's employees mailed the agreements to the persons on those lists in June 2022 and September 2022, respectively. However, like Rump and Rojas, Haggarty does not state that he mailed the agreement to Ewing in the body of his affidavit. Regarding the two mailing lists of employees, they are comprised of over one thousand pages combined, and Toyota does not direct the Court to the exact page containing Ewing's name and address in its legal memoranda. *See generally* [14], Ex. 1-2. It is well established that "[t]he citations to evidence must be specific, as the district court is not required to 'scour the record' to determine the merits of the parties' arguments." *Gloria V. v. Wimberley Indep. Sch. Dist.*, 2021 WL 770615, at *10 (W.D. Tex. Jan. 5, 2021) (collecting cases).[3]

On this point, Toyota raises a single argument in its Reply [26], arguing that "[w]hile [Ewing] argues that the sworn declarations produced by [Toyota] do not pertain to [her], Rump specifically expressed that the information contained in the exhibits was redacted 'other than the information for the individual at issue in the lawsuit.'" [26] at p. 3. This argument is a non-starter. Rump makes this statement in reference to the list of employees whose mail was *returned*, which Toyota argues does not include Ewing. *See* [12], Ex. 1 at p. 1. The statement makes no reference to Ewing, and, in response to Ewing's point, Toyota does not specify where in the sworn declarations, or the exhibits attached thereto, Ewing's name appears. The Court also notes that all sworn declarations provided by Toyota are dated several months (almost one year) prior to the commencement of this lawsuit.

In sum, the Court does not find that Toyota has met its burden is establishing that Ewing assented to the Arbitration Agreement absent sufficient proof that the agreement was actually

---

[3] The Court did attempt to locate Ewing's name on both lists and was unsuccessful in doing so.

mailed to her.[4] Toyota simply has come forward with no evidence to show that it mailed the Arbitration Agreement to Ewing. Toyota does not raise any further argument to support the existence of a valid arbitration agreement pursuant to Mississippi law. Even if Toyota had provided sufficient evidence to prove that it mailed the Arbitration Agreement to Ewing, the Court finds that Ewing has provided evidence which puts the making of the arbitration agreement in issue.

In Mississippi, "[w]hether a contract exists involves both questions of fact and questions of law. However, where the existence of a contract turns on consideration of conflicting evidence, that presents a question of fact properly presented to, and determined by, the jury." *Banking Grp., Inc. v. S. Bancorp Bank*, 367 So. 3d 337, 345 (Miss. Ct. App. 2022) (quoting *Jackson HMA, LLC v. Morales*, 130 So. 3d 493, 498-98 (Miss. 2013)). In response to Toyota's Motion [12], Ewing submits her sworn declaration stating that at no point did she receive the agreement in the mail. *See* [23], Ex. 1. She also states in her declaration that no "employee for Defendant hand-deliver[ed] the documents to [her] or inform[ed] [her] that [she] should be on the lookout for documents in the mail." *Id*. In addition, Ewing provides the sworn declaration of her husband, Donnie Ewing, also a Toyota employee, in which he states that he too did not receive the agreement via mail or hand delivery in June 2022. *See id.*, Ex. 2 at p. 1. She also submits sworn declarations of both current and former Toyota employees, Telissea Walker, Ashley Collins Eden, and Trinity

---

[4] The Court is cognizant that the parties spend a considerable amount of time arguing whether a so-called "mailbox rule" provides a presumption in favor of Toyota that Ewing received the agreement by mail. The Fifth Circuit has applied the rule in the context of modification of the terms of at-will employment in cases involving Texas state law. *See Trammell v. AccentCare, Inc.*, 776 F. App'x 208, 210 (5th Cir. 2019). Though referred to by the same or similar name as a rule which is widely recognized in general contract law, this rule is different and specifically recognizes that "a letter properly addressed, stamped and mailed may be presumed to have been received by the addressee in the due course of the mail." *Id.* The Court need not extensively address this argument as Toyota itself acknowledges that no Mississippi court has "ever addressed the mailbox rule in the context of the formation of an arbitration agreement[.]" [26] at p. 4. The Court is likewise unaware of any Mississippi case applying that rule in this context or with respect to general contract formation for that matter. Irrespectively, because Toyota has not met its burden of proving the existence of an agreement to arbitrate for the reasons stated above, there is no need for the Court to make an *Erie* guess with regard to the applicability of this rule in this case.

Henderson, who deny receiving the agreement via mail or otherwise during the relevant time period. *See id.*, Ex. 3-5. Assuming *arguendo* that Toyota had demonstrated the formation of an agreement to arbitrate between it and Ewing, this evidence creates a question of fact as to whether Ewing ever received the Arbitration Agreement and, in turn, whether her conduct in continuing her employment was a manifestation of assent to that agreement. Additionally, the Fifth Circuit has held that in order "'[t]o put the making of the arbitration agreement in issue,' a party is 'required to unequivocally deny that he agreed to arbitrate and produce some evidence supporting his position.'" *Gallagher v. Vokey*, 860 F. App'x 354, 357 (5th Cir. 2021) (quoting *Chester v. DirecTV, LLC*, 607 F. App'x 362, 363-64 (5th Cir. 2015) (per curiam)). The Court finds that Ewing, through her own sworn declaration, has unequivocally denied receiving the Arbitration Agreement from Toyota in June 2022 and has denied agreeing to arbitrate her claims against Toyota. *See* [23], Ex. 1 at p. 2. She has also provided some evidence, in the form of declarations of current and former Toyota employees, which place into question the accuracy of Toyota's mailing procedures. *Gallagher*, 860 F. App'x at 357-58 ("It is sufficient that, where competent evidence showing the formation of an agreement to arbitrate has been presented, § 4 requires a party resisting arbitration to produce *some* contrary evidence to put the matter in issue.") (emphasis in original). The Court does not find that an agreement to arbitrate has been established here.[5]

*Conclusion*

For the reasons set forth above, Toyota's Motion [12] is DENIED. The Magistrate Judge will hold a conference to set the appropriate deadlines in this case in due course.

SO ORDERED, this the 30th day of September, 2025.

/s/ Sharion Aycock
SENIOR UNITED STATES DISTRICT JUDGE

---

[5] Based on the Court's findings as explained above, the Court need not address Ewing's remaining arguments regarding procedural unconscionability.